UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Criminal Action No.: 7:13-cr-00504-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Kevin Mitchell Eades, ) | **ORDER AND OPINION** |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on Defendant Kevin Mitchell Eades' ("Defendant") Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF No. 126.) The United States of America ("Government") filed a response in opposition to Defendant's Motion, and contemporaneously moved for summary judgment. (ECF Nos. 135, 136.) Pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), the court advised Defendant of the summary judgment procedure and the consequences if he failed to respond. (ECF No. 137.) Defendant has filed his response (ECF No. 139), and the matter is now ripe for resolution.

A prisoner in federal custody under sentence of a federal court may petition the court that imposed the sentence to vacate, set aside, or correct the sentence. *See* 28 U.S.C. § 2255. The prisoner may be entitled to relief upon a showing: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack. *Id.* A petitioner collaterally attacking his sentence or conviction pursuant to § 2255 bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. *White v. United States*, 352 F. Supp. 2d 684, 686 (E.D.

1

Va. 2004) (citing *Miller v. United States*, 261 F.2d 546 (4th Cir. 1958)). In ruling on a § 2255 motion, the court may dismiss the motion without a hearing where "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings, that the moving party is not entitled to relief." 28 U.S.C. § 2255(b) (noting that a hearing is not required on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief).

The Government has also sought summary judgment on Defendant's claim in this case. (ECF No. 136.) "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

After reviewing the parties' respective memoranda and the record of the underlying proceedings, the court determines that a re-sentencing/evidentiary hearing is necessary.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2013, a federal grand jury returned a 2-count Indictment charging Defendant and co-defendant Joseph Matthew Polk with felon in possession of firearms charges, in violation of Title 21, United States Code, §§ 922(g)(1), 924(a)(2) and 924(e). (ECF No. 1.) On October 28, 2013, Defendant entered a guilty plea, without a plea agreement, to these charges. (ECF No. 73.) At the guilty plea proceeding, Defendant was advised of the elements of the offenses to which he was pleading guilty. (ECF No. 72.) As to the possible penalties he was facing, the Government advised ". . . , the penalties as to [Defendant], with a defendant who has at least three prior convictions for a violent felony or serious drug offense, are a mandatory minimum term of imprisonment of 15 years and a maximum term of imprisonment of life." (*Id.*)

An initial Presentence Investigation Report ("PSR") was prepared finding Defendant subject to the enhanced penalty of 15 years to life pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). (ECF No. 135 at 2.) Defendant filed an objection to the PSR challenging the use of his 3 burglary convictions as predicate offenses to classify him as an armed career criminal under the ACCA. (*Id.*)

On February 6, 2014, the U.S. Probation Office issued a revised PSR reflecting a statutory maximum sentence. (*Id.*) In the revised report, the guidelines were calculated resulting in a total offense level of 26 and a criminal history category VI, providing for an advisory range of 120 to 150 months of imprisonment. (*Id.*) Because the statutory maximum for Defendant's crime as pled was 10 years, the guideline range became 120 months pursuant to U.S.S.G. § 5G1.1(c)(1). (*Id.*) No objections were filed to the revised PSR. On the same day, at Defendant's sentencing hearing, the Government placed the agreement between the parties on the record. (ECF No. 80.) In the agreement, the Government decided not to seek a sentence enhancement under the ACCA and instead agreed to pursue "the lower statutory maximum sentence of 10 years." (*Id.*) In exchange, Defendant waived his right to contest his conviction or sentence in any direct appeal or post-conviction action, except for claims of ineffective assistance of counsel or prosecutorial misconduct. (*Id.*) The court then sentenced Defendant to 120 months of imprisonment. (ECF No. 82.)

In his Affidavit, Defendant's prior counsel attests that Defendant's original PSR did not recognize that the prior convictions relied on to apply the ACCA enhancement were juvenile convictions subject to a different analysis under the statute. (ECF No. 142); *see United States v. Wright*, 594 F.3d 259 (4th Cir. 2010) ("Juvenile convictions must involve the use of a firearm, knife, or explosive device to be considered predicate offenses."). There was no evidence that the

3

three juvenile convictions involved a firearm, knife or explosive device. (ECF No. 142.) Defendant's trial counsel admitted that he was not aware of *Wright* at the time of Defendant's sentencing and believed Defendant did qualify under the ACCA. (*Id.*) Further, trial counsel stated that he convinced the Government's attorney to drop the ACCA classification the day of sentencing in exchange for Defendant agreeing to the maximum sentence of ten (10) years and waiving his appellate rights ("I would never have advised Defendant to agree to the maximum sentence or to waive his appellate rights if I would have believed he did not qualify under the ACCA."). (*Id.*)

Thereafter, Defendant filed an appeal, with appellant counsel presenting the following issue for review: "The appellant was sentenced under the false impression that the government was reducing his sentence by agreeing not to ask for sentencing under the ACCA, but in reality, the appellant was not subject to the ACCA and the plea, the plea agreement, and sentencing should be vacated because they were all tainted by that erroneous assumption." *See United States v. Eades*, 583 F. App'x 257 (4th Cir. 2014). Defendant's appellate brief further challenged the application of the ACCA, the calculation of the guidelines' base offense level, and the waiver of appellate rights. *Id.* The government "moved to dismiss [Defendant's] appeal pursuant to the waiver of appellate rights to which he agreed at his sentencing." *Id.* The Fourth Circuit granted the Government's Motion in part and dismissed Defendant's appeal to the extent that he challenged his sentence and to the extent he challenged the validity of his plea. *Id.* The Fourth Circuit declined to review the ineffective assistance claims and recommended Defendant "bring his claim, if at all, in a 28 U.S.C. § 2255 motion in order to allow for adequate development of the record." *Id.*

On January 7, 2015, Defendant timely filed his Section 2255 Motion asserting that his "plea agreement was based on ineffective assistance of counsel and was an unknowing and

4

involuntary arrangement and an invalid and void agreement." (ECF No. 126 at 4.) On February 9, 2015, the Government filed a response in opposition and contemporaneously moved for summary judgment asserting: (1) Defendant is barred from collaterally attacking his conviction on the basis of an issue raised on direct appeal, and (2) there is no evidence in the record that indicates that Defendant's attorney provided ineffective assistance of counsel or how his attorney's alleged failure impacted the outcome of the case. (ECF No. 135.) The court received a letter dated March 24, 2015, from Defendant's appellate attorney, Derek J. Enderlin. Attached to that letter was Defendant's Response to the *Roseboro* Order. (ECF No. 140.) According to Attorney Enderlin and the text in Defendant's Response, Defendant originally sent his Response to the Clerk of Court for the Fourth Circuit Court of Appeals instead of this court. (*Id.*) Finally, on April 9, 2015, Attorney Enderlin filed a response to the Government's Motion on behalf of Defendant stating that: (1) his counsel was ineffective in advising him that he was subject to the ACCA, (2) that he would not have plead guilty and/or agreed to the maximum sentence but for this improper advice, and (3) that likely he would not have been sentenced to the maximum sentence but for this improper advice. (ECF No. 141.)

On April 20, 2015, the court issued an Order denying in part Defendant's § 2255 Motion and granting in part the Government's Motion for Summary Judgment. (ECF No. 146.) The court held that "any argument that Defendant would have proceeded to trial and not pleaded guilty if he believed he was not subject to enhancement is unfounded." (ECF No. 146 at 6.) However, the court stated it needed additional briefing as to the second prejudice argument raised by Defendant, which stated that if his attorney had not advised him that he was subject to the enhancement, and had therefore not made the agreement, then "he could have challenged the conclusions in the PSR" (ECF No. 126-1 at 7). (ECF No. 146 at 6.) Thus, the remaining issue is in regard to whether

Defendant could have challenged the cross reference in his PSR that the use of the firearm was in conjunction with the felony offense of voluntary manslaughter based on U.S.S.G. § 2K2.1(c)(1)(B) and U.S.S.G. § 2A1.3(a), and possibly have been subject to a lower guidelines range, had he known he was not an armed career criminal, and not subject to the ACCA.

On May 2, 2015, the Government filed a response to the court's Order positing that "because evidence supports the cross reference [for voluntary manslaughter] in Defendant's case, he cannot claim he was prejudiced by a failure to object to its applicability." (ECF No. 148 at 2.) However, the Government did concede that statements by Defendant and Polk "arguably could support a self-defense finding," as opposed to a finding of voluntary manslaughter. (*Id*. at 3.)

On December 8, 2015, Defendant filed a reply to the Government's Response to the briefing required by the court's Order, espousing that Defendant was prejudiced by not having a fair opportunity to challenge the appropriateness of the application of the cross reference. (ECF No. 164 at 3.)

## II. ANALYSIS

As a result of the application of the cross reference for voluntary manslaughter, Defendant's offense level was 29. (ECF No. 148 at 2.) After 3 levels were deducted for acceptance of responsibility, the total offense level became 26. (*Id*.) With a criminal history category of VI and a total offense level of 26, Defendant's guideline range was 120 to 150 months. (*Id*.) Because the statutory maximum for Defendant's crime as pled is 10 years, the guideline range became 120 months. (*Id*.) Defendant was sentenced to 120 months. (ECF No. 82.)

It is undisputed that Travis Koin was killed by Defendant with the .22 caliber AR-15 rifle that was found at Timothy Edger's residence in Woodruff, SC. (ECF No. 148 at 2.) Edger provided a statement, that after the shooting, he picked up Polk and Defendant in York County

and transported them to Woodruff. (*Id*.) Polk and Defendant were carrying two 9mm's and the .22 caliber assault rifle. (*Id*.) Although it is undisputed that Defendant killed Koin with the .22 caliber rifle, it is disputed as to the motivation for the shooting. (ECF No. 148 at 3.) Statements provided to law enforcement after the shooting are inconsistent as to whether Koin was killed in self-defense/defense of others or killed by Defendant during an argument between Polk and Koin. (*Id*.) The account of the shooting provided by witnesses Ashley Harvell and Kenneth Adams support a voluntary manslaughter finding. (*Id*.) Statements by Defendant and Polk support a self-defense/defense of others finding. (*Id*.)

Had Defendant's counsel successfully argued and challenged the application of the cross reference in Defendant's PSR, the resulting guideline range could have been lower. (*Id*.) Without the cross reference under U.S.S.G § 2K2.1(c)(1)(B) and U.S.S.G. § 2A1.3(a), Defendant's offense level would have been 24 with a 3-level deduction for acceptance of responsibility, creating a total offense level of 21. (*Id*. at 4.) A criminal history category of VI with a total offense level of 21 results in an advisory guideline range of 77-96 months. (*Id*.)

In order to prevail on a claim of ineffective assistance of counsel, the defendant must prove that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficiencies prejudiced his defense. *Strickland v. United States*, 466 U.S. 668 (1984). The defendant "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690.

At this point, the court only needed to address the second element: prejudice. Based on the court's review of the current record and the additional briefing provided by the parties, it finds that

7

there is enough evidence to support Defendant's position that his counsel's deficiencies prejudiced his defense. Specifically, if Defendant's attorney had advised him that he was not subject to the enhancement, and had therefore not made the agreement, Defendant could have challenged the cross reference for voluntary manslaughter in his PSR. The court determines that a re-sentencing hearing is necessary, at which time the court will allow for an evidentiary presentation on the issue of whether the use of the firearm was in conjunction with voluntary manslaughter or self-defense/defense of others.

### III. CONCLUSION

After reviewing the parties' respective memoranda and the record of the underlying proceedings, the court determines that a re-sentencing/evidentiary hearing is necessary.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

January 24, 2018
Columbia, South Carolina